**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| CONTOUR IP HOLDING, LLC,<br><br>*Plaintiff*,<br><br>vs.<br><br>FIRSTECH, LLC,<br><br>*Defendant*. | CASE NO.: 2:26-CV-00734<br><br>JURY TRIAL DEMANDED |

**<u>COMPLAINT FOR PATENT INFRINGEMENT</u>**

Contour IP Holding, LLC ("Contour" or "Plaintiff") files this Complaint against Firstech, LLC ("Firstech") and alleges as follows:

**<u>NATURE OF THE ACTION</u>**

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*.

**<u>THE PARTIES</u>**

2. Contour IP Holding, LLC, is a limited liability company organized under the laws of the State of Utah with its principal place of business at 26 Patriot Place, Suite 301, Foxboro, MA 02035.

3. Upon information and belief, Firstech, LLC is a limited liability company with a principal place of business at 21903 68th Avenue South, Kent, Washington 98032.

**<u>JURISDICTION AND VENUE</u>**

4. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Firstech because Firstech regularly conducts business and has committed acts of patent infringement and/or has induced or contributed to acts of patent infringement by others in this District and in the State of Texas. Firstech, directly and/or through subsidiaries or intermediaries, has committed acts of infringement and continues to commit acts of infringement in this District by making, using, selling, offering to sell, and/or importing its Accused Products (identified below) that infringe one or more of Contour's patents.

6. Venue is proper in this judicial district under 28 U.S.C. § 1400(b). Firstech offers products and services for sale, conducts business, and has physical business locations in the Eastern District of Texas.

7. Firstech maintains a regular and established place of business in this District. It maintains a primary distribution and training facility at 1200 Lakeside Parkway Suite 350 Flower Mound, TX 75028. *See e.g.*, https://www.firstechllc.com/contact/.

8. Firstech's facility is located in Denton County, a county in this District.

1200 Lakeside Pkwy, Flower Mound, TX 75028

Lease Industrial

| | |
|---|---|
| Available SF | **55,875 SF** |
| Building SF | **254,258 SF** |
| Clear Height | **30 ft** |
| Dock Number | **15** |
| Drive in Number | **1** |
| County | **Denton** |

*See* https://www.flowermound.gov/2410/Property-Search (Flower Mound's official website identifying Firstech's building as being in Denton County).

9. Denton County tax records confirm that Firstech pays taxes to Denton County to operate a facility in this District.




*See* https://taxweb.dentoncounty.gov/Accounts/AccountDetails?taxAccountNumber=1055279DEN.

10. Firstech purposefully directs its Accused Products into established distribution channels within this District and the United States. Further, Firstech induces its subsidiaries, affiliates, retail partners, and customers to make, use, sell, offer for sale, and/or import into the United States, including within this District, its Accused Products and place those products into the stream of commerce via established distribution channels knowing that such products would be sold and used in the United States, and in the Eastern District of Texas. For example, Firstech sells its Accused Products through its website at momentocam.com, which is accessible to the residents of this District. And, as shown below, Firstech also distributes its products online, including the Accused Products, through other online distributers such as Best Buy (https://www.bestbuy.com/product/momento-md-8100-hd-dash-camera-kit-front-and-rear-camera-black/J39HXC2RGL/sku/6616073?utm_source=feed).

11. Furthermore, in addition to online sales, Firstech distributes its products, including the Accused Products, for sale in retail stores located throughout this District, the State of Texas, and throughout the United States. As an example, Momento.com shows several locations in this District where a consumer may purchase a Firstech product. Firstech induces retail stores to sell Firstech's Accused Products directly to consumers.




*See* https://www.momentocam.com/find-a-dealer.

12. Firstech regularly markets and sells (directly or indirectly), its products within this District. As stated above, Firstech owns, operates, advertises and/or controls the websites https://www.firstechllc.com/ and www.momentocam.com, through which it advertises, sells, offers to sell, provides, and/or educates customers about its products and services using Accused Products. Firstech has placed and continues to place into the stream of commerce Accused Products via established distribution channels with the knowledge and understanding that such products are being and will continue to be sold in this Judicial District. Firstech ships or causes to

be shipped Accused Products and materials instructing its customers to perform infringing activities out of and into this District. Therefore, this Court has personal jurisdiction over Firstech.

## ASSERTED PATENTS

13. Contour is the owner and the assignee of U.S. Patent No. 12,206,983 (the "'983 Patent"), entitled "Portable Digital Video Camera Configured for Remote Image Acquisition Control and Viewing." Contour has ownership of all substantial rights in the '983 Patent, including the right to exclude others and to enforce, sue and recover damages for past and future infringement. A true and correct copy of the '983 Patent is attached as **Exhibit A**. Claim 1 is a representative example of the claims asserted in the '983 Patent.

14. Claim 1 of the '983 Patent reads as follows:

A first video camera, comprising:

a lens;

an image sensor configured to generate first image data from light propagating through the lens;

at least one non-audio data sensor configured to produce first non-audio sensor data associated with the first video camera;

a wireless connection protocol device; and

a processor, comprising:

a video encoder, and

memory,

wherein the processor is configured to:

receive the first image data from the image sensor,

receive the first non-audio sensor data from the at least one non-audio data sensor,

generate at least one encoded video data stream using the video encoder, wherein a data type of the first non-audio sensor data is different from a data type of the at least one encoded video data stream,

send, using the wireless connection protocol device, the at least one encoded video data stream by wireless transmission to a first remote computing

device, wherein the first remote computing device is connected to a first data storage medium, and wherein the first remote computing device is configured to store the at least one encoded video data stream on the first data storage medium as a first file,

combine the first non-audio sensor data with the at least one encoded video data stream to form a combined video stream,

communicate at least part of the combined video stream to the memory, wherein the at least one encoded video data stream is stored as a first track and the first non-audio sensor data is stored as a second track that is distinct from the first track, and

generate time-synchronizing data,

wherein the time-synchronizing data is used to synchronize the first track with the second track,

wherein the first video camera is configured as a media server that enables access to the combined video stream.

15. Among others, Claim 1 of the ’983 Patent is valid, enforceable, and was duly and legally issued on January 21, 2025, in full compliance with Title 35 of the United States Code.

16. The ’983 Patent is the “Patent-in-Suit” or the “Asserted Patent.”

## BACKGROUND

17. The claimed invention of the Asserted Patent was developed in December 2009 by a team at Contour, Inc., who recognized that improvements were needed in the point-of-view (POV) camera business. For example, existing POV cameras generally lacked preview and control ability to ensure users were able to capture the perfect shot the first time. Further, existing products lacked the ability to provide quality video along with other non-video data to help capture the full experience, and to be able to remotely view and control the camera. The technological advancements claimed by the Asserted Patent allowed for features and capabilities existing POV cameras were incapable of.

18. Contour implemented the claimed inventions into its award-winning camera, the ContourGPS. In 2011, the ContourGPS was awarded the prestigious Consumer Electronics Show

(CES) Innovations Award (https://www.bikeradar.com/news/contourgps-helmet-cam-lets-you-use-phone-as-viewfinder). Similarly, Notebooks.com awarded the ContourGPS and Contour mobile app the coveted Best Mobile Lifestyle Accessory of CES 2011 award (https://notebooks.com/2011/01/13/best-of-ces-2011-awards-for-notebooks-com/), CNET awarded the ContourGPS its Editor's Choice Award (https://www.cnet.com/reviews/contour-gps-hd-wearable-camcorder-camera-1400-review/), and Red Dot awarded the ContourGPS the 2011 Red Dot Production Design Award (https://www.red-dot.org/zh/project/contourgps-28132). When explaining its rationale for giving the ContourGPS and Contour mobile app its award, Notebook.com accurately captured the essence of the invention: "When it comes to capturing your life on the go it's hard to find a solution that's more versatile than the ContourGPS Camera which comes with an app that allows you to use your iPod or iPhone as a viewfinder and to adjust settings on the fly." (https://notebooks.com/2011/01/13/best-of-ces-2011-awards-for-notebooks-com/).

19. As proven by the many prestigious accolades, the claimed inventions of the '983 Patent are marked improvements to existing camera design and technology. For example, claim 1 of the '983 Patent teaches innovations including integrating "non-audio data sensors" into the camera that can capture non-audio data, "combin[ing] the first non-audio sensor data with the at least one encoded video stream to form a combined video stream," "communicat[ing] at least part of the combined video stream to memory," storing the encoded video data stream "as a first track and the first non-audio sensor data as a second track," and "generat[ing] time-synchronizing data, wherein the time-synchronizing data is used to synchronize the first track with the second track." These innovations expand the utility of the camera. Indeed, these inventions allow the camera to capture video footage combined with additional data, such as GPS data, to provide video files with additional and important context. This feature has also received public acclaim. For example, as

CNET noted, ContourGPS's GPS functionality allows Contour's Storyteller software to "parse and display [GPS data] on a Google Map with an elevation graph." (https://www.cnet.com/reviews/contour-gps-hd-wearable-camcorder-camera-1400-review/). These improvements benefit diverse audiences including athletes (like skiers whose performance relies on elevation), daily vloggers who want to geotag their favorite experiences, and families looking to document where milestones occurred. Furthermore, these improvements also allow dash cams on vehicles to report additional context, such as speed and location of the vehicle, alongside a footage of an accident.

20. The claims of the Asserted Patents involve more than well-understood, routine, and conventional activities. For example, generating two video streams of different quality and wirelessly transmitting the lower quality stream from a camera to a remote computer device, along with the other claimed elements, was a novel idea that Contour invented and patented. The conventional approaches, such as after-the-fact generation of a video from a previously recorded video or streaming a higher quality video were limited by bandwidth and battery power limits, especially in the 2009 timeframe. Contour's solution allowed devices to quickly transmit lower quality videos wirelessly for previews or live video while also generating a higher quality video with contextual data as well.

21. Contour's inventions as claimed in the Asserted Patents are and have been used in innovative wearable and gear-mountable camera products sold under the Contour brand, such as the Contour+, Contour+2, and Contour 4K, and in mobile applications such as the Contour Connect app for iOS, Android, and Windows Phone.

## ACCUSED PRODUCTS

22. Firstech makes, uses, offers to sell, sells, and/or imports dash camera products that infringe claims of the Asserted Patent. Firstech's infringing camera products include dash cameras

in Firstech's Drone Series (XC-LTE, XC2, XC-IR1, XC-RC1, and EC1) (collectively, the "Drone Dash Cameras") and Firstech's Momento Series (M8, M8 Pro, M8 Max, M7, M7 Wi-Fi, M6, M5, M4, R1, C3, and S1) (collectively, "Momento Dash Cameras"). Firstech's infringing camera products from its Drone Series and Momento Series are collectively referred to as the "Accused Camera Products."

23. Firstech also makes, uses, offers to sell, sells, and/or imports camera product accessories (collectively, "Dash Cam Accessories") such as mounts, mounting components, filters, antenna modules, charging equipment, microSD cards, and other video recording accessories that are functionally related to, and are specifically designed for use with its Accused Camera Products.

24. Additionally, Firstech also provides Android and iOS applications for use with its Accused Camera Products. The Android and iOS applications include, but are not limited to, the Momento Dash Cam Viewer app, DroneMobile app, myFirstech app, and all other similar applications (collectively, the "Dash Camera Applications").

**Overview of the Firstech Accused Camera Products**

25. The Accused Camera Products, including the Momento M8 Max Dash Camera as an exemplary product, practice each limitation of at least claim 1 of the '983 Patent. The following allegations describe representative features of the Momento M8 Max Dash Camera.

26. The Momento M8 Max is a video camera having a lens and a Sony image sensor configured to generate image data from light propagating through the lens.

27. The Momento M8 Max includes non-audio data sensors, including a GPS receiver, a 3-axis accelerometer (or g-sensor), and a battery-voltage sensor. These sensors produce non-audio sensor data, including GPS location and time, speed, impact and motion data, and battery-voltage data. The Momento M8 Max further includes Wi-Fi capabilities.

28. The Momento M8 Max includes an Allwinner V536 processor having an H.265/H.264 video encoder and memory, including DRAM, flash memory, and a microSD card. The processor receives image data from the image sensor and non-audio sensor data from the sensors, and generates encoded video data streams, including recorded and live-view streams. The non-audio sensor data has a different data type from the encoded video data streams.

29. Using Wi-Fi, the Momento M8 Max sends an encoded video data stream to a remote computing device, such as a phone or tablet running the Momento Dash Cam Viewer app. The remote computing device stores the encoded video data stream on its storage as a file.

30. The Momento M8 Max combines non-audio sensor data with encoded video data to form a combined video stream, including an .mp4 file. It communicates at least part of the combined video stream to the processor's memory, storing the encoded video data as a first track and the non-audio sensor data as a distinct second track, and generates time-synchronizing data used to synchronize the first and second tracks.

31. The Momento M8 Max is configured as a media server that enables access to the combined video stream, including through embedded HTTP and RTSP server functionality. A detailed (but not exhaustive) claim chart for the Momento M8 Max Dash Camera is attached as **Exhibit B**.

## FIRSTECH'S PRE-SUIT KNOWLEDGE OF THE '983 PATENT

32. Firstech has had actual knowledge of the '983 Patent since at least December 31, 2025, when Contour, through counsel, sent Firstech a letter identifying Contour's patent rights and Firstech's infringement, receipt of which Firstech's counsel confirmed no later than January 28, 2026.

33. Following that initial notice, Contour and Firstech engaged in extensive pre-suit communications concerning Contour's patents, including the '983 Patent. During the course of

those communications, Contour provided Firstech with detailed claim charts—including an initial claim chart and two supplemented claim charts—mapping at claim 1 of the ’983 Patent to Firstech’s the Momento M8 Max Dash Camera and identifying how this product meets each limitation of that claim. Notwithstanding this knowledge, Firstech has continued to make, use, offer to sell, sell, and/or import the Accused Products without a license to the ’983 Patent.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 12,206,983

34. The allegations set forth in the foregoing paragraphs are hereby realleged and incorporated herein by reference.

35. In violation of 35 U.S.C. § 271(a), Firstech has directly infringed and continues to directly infringe, both literally and/or under the doctrine of equivalents, the ’983 Patent by making, using, offering for sale, selling, and/or importing Accused Products in the United States, including within this Judicial District, that infringe at least claim 1 of the ’983 Patent without the authorization of Contour.

36. Additionally, in developing, testing, supporting, and demonstrating the Accused Products, Firstech operates the Accused Camera Products together with the Dash Camera Applications—for example, the Momento Dash Cam Viewer app running on a smartphone or tablet—thereby making and using the complete claimed system and obtaining its benefit in addition to offering for sale, selling, and/or importing the Accused Products. Firstech’s infringement is complete without regard to the acts of any other party.

37. Further, end users also directly infringe at least claim 1 under 35 U.S.C. § 271(a): by installing a Dash Camera Application, pairing it with an Accused Camera Product, and operating them together as Firstech designs and instructs, an end user makes and uses the complete claimed system and obtains its benefit. That end-user infringement is the direct infringement Firstech induces and contributes to as alleged below.

38. To the extent that performance of any limitation of claim 1 were found attributable to an end user or any other party rather than to Firstech, Firstech remains liable under 35 U.S.C. § 271(a) because it directs and controls that performance, including by designing the Accused Products to operate together to practice the claimed system and by conditioning the end user's receipt of the Accused Products' benefits on the end user's installation, pairing, and operation of the Dash Camera Applications with the Accused Camera Products.

39. In violation of 35 U.S.C. § 271(b), Firstech has induced its customers and/or end users and continues to induce its customers and/or end users to infringe, both literally and/or under the doctrine of equivalents, at least claim 1 of the '983 Patent by providing instructions via its website(s), product manuals, user manuals, product support, or through other documents that induce its customers to directly infringe the '983 Patent and by making, using, offering for sale, selling, and/or importing Accused Products in the United States, including within this Judicial District, that infringe at least claim 1 of the '983 Patent without the authority of Contour. Firstech has taken and continues to take these actions with knowledge of the '983 Patent and with the specific intent to cause its customers and end users to directly infringe at least claim 1 of the '983 Patent.

40. In violation of 35 U.S.C. § 271(c), Firstech has actively contributed to direct infringement, and actively contributes to direct infringement of the '983 Patent by making, using, offering for sale, selling, and/or importing components (including, but not limited to, the Accused Camera Products, Dash Cam Accessories, and Dash Camera Applications) into the United States, including within this Judicial District, that infringe at least claim 1 of the '983 Patent without the authority of Contour. These components have no substantial non-infringing use and are especially made or especially adapted for use in a direct infringement of the '983 Patent. In particular, the

Dash Camera Applications and the firmware of the Accused Camera Products constitute a material part of the invention and are supplied by Firstech for use in the infringing combination formed when end users operate the Accused Camera Products together with the Dash Camera Applications on their computing devices, and Firstech knows those components to be especially made or especially adapted for that infringing use and not to be staple articles of commerce suitable for substantial non-infringing use.

41. Firstech has actively contributed to direct infringement of the ’983 Patent by others, either literally or under the doctrine of equivalents, by selling the Accused Camera Products and Dash Cam Accessories and by providing and/or making available for download the Dash Camera Applications for use with the Accused Camera Products.

42. The Accused Camera Products with wireless capability, the Dash Cam Accessories, and the Dash Camera Applications are especially made and/or especially adapted for use with the claimed invention of at least claim 1 of the ’983 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

43. The Dash Camera Applications are especially made and/or especially adapted for use with the claimed invention of at least claim 1 of the ’983 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

44. Any non-infringing uses of the Accused Camera Products, Dash Cam Accessories, and Dash Camera Applications, including use of the Accused Camera Products or Dash Cam Accessories with wireless capability in combination with the Dash Camera Applications, would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

45. Firstech’s infringement of the ’983 Patent has been, and continues to be, willful, wanton, and deliberate. Since at least December 31, 2025, Firstech has had actual knowledge of

the ’983 Patent and of Contour’s allegations that the Accused Products infringe at least claim 1, yet Firstech has continued to make, use, offer to sell, sell, and/or import the Accused Products despite an objectively high likelihood that its actions constituted infringement of a valid patent.

46. Firstech’s inducement of infringement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c), as alleged above, have been and continue to be undertaken with knowledge of the ’983 Patent, and with knowledge that the acts Firstech induces and contributes to constitute infringement of the ’983 Patent, since at least December 31, 2025.

47. Unless enjoined by this Court, Firstech will continue to infringe the ’983 Patent.

48. Because of Firstech’s infringing activities, Contour has suffered damages and will continue to suffer damages in the future.

## JURY DEMAND

49. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Contour demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

50. Contour respectfully requests that this Court enter judgment in Contour’s favor and against Firstech as follows:

A. That Firstech has directly and indirectly infringed at least one claim of the Asserted Patent;

B. That Firstech’s infringement has been willful;

C. An award of damages—including an award of damages for infringement predating this Complaint—to be paid by Firstech adequate to compensate Contour for Firstech’s infringement of the Asserted Patent and in no event less than a reasonable royalty together with interest and costs;

D. An award of treble damages in accordance with 35 U.S.C. § 284;

E. An order enjoining Firstech and its officers, agents, servants, employees, users, attorneys, and all those persons in active concert or participation with Firstech from the acts described in this Complaint;

F. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Contour's reasonable attorneys' fees; and

G. Any other relief at law or in equity as the Court deems just and proper.

Dated: August 21, 2026

Respectfully submitted,

/s/ *Gary R. Sorden*

Gary R. Sorden
Texas Bar No. 24066124
gsorden@coleschotz.com

Timothy J.H. Craddock
Texas Bar No. 24082868
tcraddock@coleschotz.com

Arjun P. Nair
Texas Bar No. 24120122
anair@coleschotz.com

COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202
Tel: (469) 557-9390
Fax: (469) 533-1587

Jeffrey M. Saltman
D.C. Bar No. 979812
jsaltman@coleschotz.com
COLE SCHOTZ P.C.
1050 Connecticut Ave, NW
Suite 500
Washington, DC 20036
Tel: (202) 221-7500
Fax: (202) 478-0945

**ATTORNEYS FOR PLAINTIFF
CONTOUR IP HOLDING, LLC**